BERDIN, (LEHMAN v.) See Case No. 8,215.

## Case No. 1,337.
### BERG v. THISTLE.
[3 App. Com'r Pat. 395.]
Circuit Court, District of Columbia. Oct. 16, 1860.

PATENTS FOR INVENTIONS — CONCEALMENT OF INVENTION—LACHES —EVIDENCE — ADMISSIONS OF PARTY.

[1. Where an inventor conceals his invention from the public for a number of years, and during the period of concealment another inventor makes and patents the same invention, the prior inventor, by reason of his laches, forfeits his right to a patent in favor of the patentee.]
[2. Where a person who had contracted to purchase the invention from the patentee went to the prior inventor, on hearing of the controversy, frankly avowed his business, and inquired for the truth of the matter, the deliberate claim of the prior inventor that he discovered the invention six years before will be taken in evidence as a truthful admission against his interest, showing laches.]

[Appeal from the commissioner of patents, upon an interference declared. Reversed.]

MERRICK, Circuit Judge. In this case which is an appeal upon an interference declared with the patent of appellant upon an application of appellee for a patent for a certain improvement in wardrobe bedsteads, there appears no question as to the complete identity of the patentable matter covered by the claims of the respective parties. Nor is there any doubt upon the evidence that the appellee is the prior inventor of the improvement in question. But the point of objection taken is that the office erred in deciding that

an abandonment by the act of the party must involve a public use of the invention abandoned, and cannot properly be urged against a single silent concealed use by the inventor, particularly when the use did not expose, as in this case, the precise character of the mechanism claimed, but only made the result visible. There can be no doubt that where a party has made an invention, and buried the secret in his own bosom, he may, after the lapse of years, came forward. and, upon making his secret known by an application for a patent, obtain the monopoly from government, as the price of the revelation of his secret. But in the mean-time if another equally ingenious has made the same invention, and has applied for and obtained a patent, and the public has thereby become possessed of the discovery, when the first inventor afterwards applies for a patent, he will be met with the inquiry whether he has used due diligence in communicating his discovery, and for the obvious reason that if, after one patent has issued, another should be issued, the monopoly which the law limits to 14 years will be protracted beyond that period by the time elapsed between the date of the first and second patent, and the public be unduly deprived of the privilege of the invention, and for this reason, and in order to stimulate inventors to alacrity and good faith towards the public, the law, in such case, wisely ordains that the first inventor shall forfeit his claims.

In this view of the law, it makes no difference whether the first inventor has made known or has concealed his invention. His laches is the same in either case, and is to be measured by the age of his discovery. The doctrine of abandonment by suffering the invention to go into public use for more than two years is wholly distinct from this doctrine of forfeiture in favor of a junior discoverer who is a prior patentee. The views which have heretofore been expressed by Judge Morsell in Ellithorpe v. Robertson, [Case No. 4,409,] by Judge Dunlop in Belson v. Spear, [Spear v. Belson, Id. 13,223,] and by myself in Sturtevant v. Greenough, [Id. 13,579,] (all in third volume of Patent Office Appeals,) and above all the language used by the supreme court of the United States in Kendall v. Winsor, 21 How. [62 U. S.] 328, 329, leave no room to doubt that the office has erred in the principle of law which must control this case. It is equally certain that the testimony when measured by correct legal rules reveals a state of facts to which the principle of law I have announced is applicable.

Two witnesses whose veracity has received no legal impeachment swear that the appellee unequivocally stated to them that he had invented the improvement six, seven, or eight years ago. The statements of these witnesses have been assailed because, as it is said, they went to the appellee as emissaries of the appellant, and that he, knowing or

suspecting them to be such, was under no obligation to speak truth to them, and is not to be held to what he averred to those witnesses. If a party knows that witnesses have been sent to extract evidence from him, it is a natural presumption that he is on his guard against them, and will make no admission to them, voluntarily calculated to prejudice his own cause unless the matter stated by him is true.

But, whatever cloud may be thrown on one of these witnesses because he went as a spy upon the appellee, the like excuse does not hold as to the other. The depositions show that he is a respectable merchant; that he was in treaty with the appellant to purchase his invention; that, hearing of the controversy, he went to the appellee, and frankly avowed his business, told him he desired to know from his own lips the truth of the matter;—and being so warned, and having every motive to tell the truth which could operate upon a fair and just minded man, the appellee deliberately claimed that he had discovered the improvement six years before. The party who talked with him had a right to believe that he spoke the truth. A court ought to presume that he spoke truth, under such circumstances. If he told a deliberate lie, as he now avers by his counsel, he has only himself to blame that an ingenious sifting of circumstantial evidence is not now made for the purpose of establishing his turpitude in that transaction, and he must abide the consequences of a prevarication which has failed to bring with it the reward he anticipated. Already are the records of patent litigation too deeply tinged with fraud and falsehood, and by my judgment in this case I am unwilling to give any encouragement to such crimes.

For these reasons, I think the conclusions of fact arrived at are equally erroneous * * * with the deduction of law announced in the office decision. Now, therefore. I hereby certify to the Honorable Philip F. Thomas, commissioner of patents, that having assigned time and place for hearing said appeal, and both parties having been heard by counsel, I have considered the reasons of appeal, and the office response thereto, with the testimony in the case, and, being of opinion that there is error in the decision of the office, the same is reversed, and a patent finally refused to the applicant, in the premises.